IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**ANTONIO TYRONE JONES,**

    Plaintiff,

v.                                                                  Civil Action No. **3:19CV310**

**NAPHCARE MEDICAL DEPARTMENT,** *et al.*,

    Defendants.

## MEMORANDUM OPINION

Antonio Tyrone Jones, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] Jones alleges that, while he was incarcerated at the Virginia Beach Correctional Center ("VBCC"), the Defendants[2] mismanaged the medical care of his

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Defendants named by Jones in his Complaint are: NaphCare Medical Department; Dr. Jamaludeen, M.D., a physician at VBCC; Mrs. Cartwright, a physician's assistant at VBCC; Ms. Parrish, the "Medical Supervising Deputy" at VBCC; Yvonne Floyd, a nurse at VBCC; A. Owens, a deputy at VBCC; and A. Swenson, a grievance coordinator at VBCC. (ECF No. 1, at 1–3.) The Court previously dismissed Defendant Owens from this action because Jones failed to mention Owens in the Complaint. (ECF No. 14.) By Memorandum Opinion and Order entered August 31, 2020, the Court dismissed Defendants NaphCare, Floyd and Swenson due to Jones's failure to timely serve them, as required by Federal Rule of Civil Procedure 4(m). Further, the "Ms. Parrish" named in the Complaint is actually Brandi Parris, a Corporal at the VBCC. (ECF No. 22.) Going forward, the Court will refer to Cpl. Parris by her name.

hernia and related administrative issues. (ECF Nos. 1, at 5; 1–1, at 2–6.)[3] The Court construes the remaining claims contained in Jones's unverified Complaint,[4] as alleging three purported violations of the Eighth Amendment:[5]

Claim One: Dr. Jamaludeen acted with deliberate indifference to Jones's serious medical needs when he failed to provide proper medical care for Jones's hernia. (ECF Nos. 1, at 5; 1–1, at 2–6.)

Claim Two: Physician's Assistant Cartwright ("PA Cartwright") acted with deliberate indifference to Jones's serious medical needs when she failed to provide proper medical care for Jones's hernia. (*Id.*)

Claim Three: Cpl. Parris acted with deliberate indifference to Jones's serious medical needs when she failed to "fast-track" Jones's transfer to the Virginia Department of Corrections ("VDOC"), so that he could receive surgery for his hernia on an expediated basis. (ECF No 1–1, at 6.)

This matter comes before the Court on two Motions for Summary Judgment. Cpl. Parris filed a Motion for Summary Judgment (the "Parris Motion," ECF No. 22), and Dr. Jamaludeen and PA Cartwright jointly filed a second Motion for Summary Judgment (the "Jamaludeen/Cartwright Motion," ECF No. 36). Jones has responded to each Motion for Summary Judgment. (ECF Nos. 35, 45.) Dr. Jamaludeen and PA Cartwright replied. (ECF

---

[3] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the punctuation, spelling, and capitalization and omits the emphasis in quotations from the parties' submissions.

[4] Jones utilized the Court's form complaint for civil rights cases under 42 U.S.C. § 1983 in initiating this action. (ECF No. 1.) In it, he was instructed: "[i]f you intend to allege several related claims, number and set forth each claim in a separate paragraph." (*Id*. at 5.) Jones did not comply. Rather, over the course of six pages, Jones laid out his claims in one rambling, and at times incoherent, narrative, which begins in his Complaint (ECF No. 1), and spills over into an attachment (ECF No. 1–1). Despite Jones's failure to follow the instructions on the form and delineate between claims, the Court has reviewed the allegations in both documents.

[5] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. AMEND. VIII.

No. 46.) For the reasons stated below, both the Jamaludeen/Cartwright Motion and the Parris Motion for Summary Judgment will be GRANTED.

## I. Standard For Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "*scintilla* of evidence" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to

3

support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of their Motion for Summary Judgment, Dr. Jamaludeen and PA Cartwright have submitted: (1) Dr. Jamaludeen's declaration (Mem. Supp. Mot. Summ. J. Ex. A ("Jamaludeen Decl."), ECF No. 37–1); (2) PA Cartwright's declaration (*id*. Ex. B ("Cartwright Decl."), ECF No. 37–2); (3) copies of Jones's medical records ("Medical Records," *id.* Ex. C, ECF Nos. 37–3 through 37–4); and, (4) supplemental copies of Jones's medical records (Reply Br. Ex. A ("Supplemental Medical Records," ECF No. 46–1). In support of her Motion for Summary Judgment, Cpl. Parris has submitted: (1) her own affidavit (Mem. Supp. Mot. Summ. J. Ex. 1 ("Parris Aff."), ECF No. 23–1); and, (2) a copy of Jones's April 8, 2019, Medical Record ("4/8/19 Medical Record," *id.* Ex. 2, ECF No. 23–2).

At this stage, the Court must assess whether Jones "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. A verified complaint is "the equivalent of an opposing affidavit for summary judgment purposes." *World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co.*, 783 F.3d 507, 516 (4th Cir. 2015) (internal quotation marks omitted) (citation omitted). However, Jones's Complaint was not notarized,[6] nor were its contents sworn

---

[6] A document can be notarized in two primary ways: through an acknowledgment or a jurat. An acknowledgment is used to verify a signature and to prove that an instrument was executed by the person signing it, whereas a jurat is evidence that a person has sworn to the truth of the contents of the document. In an acknowledgment, unlike a jurat, the affiant does not swear under oath nor make statements under penalty of perjury. *See Strong v. Johnson*, 495 F.3d 134, 140 (4th Cir. 2007) (explaining that jurat uses words "subscribed and sworn" and demonstrates an oath was rendered); *Goode v. Gray*, No. 3:07cv189, 2009 WL 255829, at *2 n.6 (E.D. Va. Feb. 3, 2009).

to "under penalty of perjury." As such, Jones's Complaint fails to constitute admissible evidence. *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004).

The responses that Jones filed to both the Jamaludeen/Cartwright and the Parris Motions suffer from similar deficiencies. The Court previously warned Jones that:

> [T]he Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law that is sworn to under penalty of perjury. Rather, any verified allegations must be set forth in a separate document titled "Affidavit" or "Sworn Statement," and reflect that the sworn statements of fact are made on personal knowledge and that the affiant is competent to testify on the matters stated therein. *See* Fed. R. Civ. P. 56(c)(4).

(ECF No. 14, at 2.) Jones did not comply with this directive in responding to either the Jamaludeen/Cartwright Motion or the Parris Motion.

Regarding the Jamaludeen/Cartwright Motion, Jones responded by filing a document he called "BRIEF IN OPPOSITION TO DEFENDANTS MOTION AND MEMORANDUM IN SUPPORT FOR SUMMARY JUDGMENT, AND DECLARATION AND BRIEF IN SUPPORT OF SUMMARY JUDGMENT IN PLAINTIFF'S FAVOR." (ECF. No. 45.) Jones's brief is comprised of: (1) his arguments against summary for judgment for Dr. Jamaludeen and PA Cartwright; and, (2) his arguments for summary judgment in his favor, despite the fact that he did not file a cross-motion for summary. His filing does not include a "*separate document titled 'Affidavit' or 'Sworn Statement'*" (ECF No. 14, at 2 (emphasis added)), nor does it include a jurat, or any other indication that it was ever sworn to before a notary. Moreover, Jones failed to sign his brief "under penalty of perjury." Consequently, Jones's response brief to the Jamaludeen/Cartwright Motion fails to constitute admissible evidence. *White*, 366 F.3d at 300.

Along with his brief, Jones included various unauthenticated exhibits that he references throughout his response. (*See* ECF 45–1.) For documents to be considered at the summary judgment stage, they "must be authenticated by and attached to an affidavit that meets the

5

strictures of Rule 56." *Campbell v. Verizon Va., Inc.*, 812 F. Supp. 2d 748, 750 (E.D. Va. 2011) (internal quotation marks and citation omitted). Because Jones did not satisfy these requirements, the Court may not consider the unauthenticated exhibits that Jones attached to his response brief. *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) (citation omitted) ("[i]t is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment").

Regarding the Parris Motion, Jones responded by filing a single document that he called "SWORN STATEMENT IN REPONSE TO DEFENDANT PARRISH MOTION FOR SUMMARY JUDGMENT." (ECF. No. 35.) Notwithstanding the name Jones ascribed to his pleading, this document is not a sworn statement. Here again, Jones failed to swear to the contents of his pleading under penalty of perjury. Jones's brief fails to include a jurat or any other indication that this document was ever sworn to before a notary. Simply put, Jones's perfunctory inclusion of the words "sworn statement" in the title does not transform this document into an affidavit or a verified statement, as required under Federal Rule of Civil Procedure 56. Consequently, Jones's response to the Parris Motion does not constitute admissible evidence. *White*, 366 F.3d at 300.

In sum, Jones failed to cite to any evidence that he wishes the Court to consider in opposition as neither Jones's Complaint, nor his responses to the Parris and Jamaludeen/Cartwright Motions and attachments thereto, constitute admissible evidence for purposes of summary judgment. *See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment). Jones's failure to present evidence to counter either the Parris or Jamaludeen/Cartwright Motions permits the Court to rely solely on said submissions in deciding the Motions for Summary Judgment. *See*

*Forsyth*, 19 F.3d at 1537; Fed. R. Civ. P. 56(c)(3) ("The Court need only consider the cited materials . . . .").

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Jones, the nonmovant.

## II. Summary of Uudisputed Facts

Dr. Jamaludeen works as the medical director at the VBCC and has held that position since January 1, 2001. (Jamaludeen Decl. ¶ 1.) Jones was incarcerated at VBCC between April 28, 2018, and June 14, 2019. (*Id.* ¶ 2.)

On April 28, 2018, pursuant to standard procedures, Jones went through "intake" where his medical history was obtained by a registered nurse and subsequently reviewed by Dr. Jamaludeen. (*Id.* ¶ 5; *see also* ECF No. 37–3, at 1–11.) On Jones's "intake" assessment form, "he reported his 'stomach was in knots' and that he was withdrawing from various substances." (Jamaludeen Decl. ¶ 5.)[7] Specifically, Jones reported that he was a daily heroin user and that he had last used that morning. (*Id.*) Jones was placed on a "detox protocol," which included "careful observation." (*Id.*)

On August 10, 2018, Jones first reported to Dr. Jamaludeen that he had a "knot on [his] stomach" that appeared during a bowel movement. (*Id.* ¶ 6.) Dr. Jamaludeen diagnosed Jones with a reducible hernia. (*Id.*) Dr. Jamaludeen avers that, while uncomfortable, a reducible hernia does not constitute a medical emergency and poses only a danger to a patient when the hernia becomes "incarcerated" or "strangulated." (*Id.* at 2 n.1.) Conservative treatment is the only thing that is needed for a reducible hernia. (*Id.*) Dr. Jamaludeen prescribed Jones Tylenol

---

[7] Except as otherwise specifically noted, the Court omits citations to medical records in the citations to Dr. Jamaludeen's Declaration.

and Motrin for discomfort related to the hernia. (*Id.* ¶ 6.) The following day, Jones refused the medication prescribed to him for his discomfort. (*Id.* ¶ 7.)

Over the following months, Jones was seen numerous times in the medial unit. (*Id.* ¶ 8.) On September 6, 2018, he was seen for cold symptoms. (*Id.*) On September 10, 2018, he was seen for athlete's foot. (*Id.*) On October 30, 2018, and November 19, 2018, he was seen for cold symptoms. (*Id.*) Jones did not report any issues related to his hernia at these four appointments. (*Id.*)

On November 28, 2018, Jones went back to the medical unit and reported mild pain associated with his hernia. (*Id.* ¶ 9.) The hernia was not strangled at that time. (*Id.*) Jones did not wish for Dr. Jamaludeen to reduce the hernia.[8] (*Id.*)

On December 15, 2018, Jones was again seen for cold symptoms. (*Id.* ¶ 10.) Jones did not complain of problems related to his hernia at that time. (*Id.*).

On December 27, 2018, Dr. Jamaludeen saw Jones about his hernia. (*Id.* ¶ 11.) The hernia was not incarcerated and was reducible. (*Id.*) Jones was not in any acute distress at this time. (*Id.*)

On January 2, 2019, Jones was brought to the medical unit with complaints of severe pain from his hernia. (*Id.* ¶ 12.) This was the first time that Jones had described the pain as "severe." (*Id.*) Dr. Jamaludeen examined Jones and determined that the hernia was tender to palpation and immediately sent Jones to the emergency department at Sentara Princess Anne Hospital. (*Id.*)

---

[8] "The standard treatment for a reducible hernia is to reduce the bulge. This is done by having the patient lie down and pushing firmly on the protrusion. At times a hernia may reduce without any external pressure." *See Ellerbe v. United States*, No. CIVA60422944HFF–WMC, 2005 WL 5337796, at *3 (D.S.C. Nov. 2005) (citations omitted).

Jones was treated at the hospital and released that same day. (*Id.* ¶ 13.) The healthcare providers at the hospital determined that there was no obstruction or gangrene in Jones's bowel. (*Id.*) At discharge, Jones was given medication for stool softening/constipation problems. (*Id.*)

Dr. Jamaludeen saw Jones the next day. (*Id.* ¶ 14.) Jones "reported that a CT scan had shown that his bowel had been 'full of feces.'" (*Id.*) Dr. Jamaludeen's assessment revealed that Jones's bowel was now easily-reducible. (*Id.*) Dr. Jamaludeen prescribed Jones two medications to help prevent constipation: Colace and Milk of Magnesia. (*Id.*) On multiple subsequent days, Jones refused these "important medications." (*Id.* ¶ 15.)

On February 8, 2019, Jones had his first appointment with PA Cartwright. (Cartwright Decl. ¶ 7.) Jones asked that PA Cartwright refill his prescriptions for Tylenol and Motrin. (*Id.*) PA Cartwright complied with his request. (*Id.*)

On February 10, 2019, Jones placed a sick call. (Jamaludeen Decl. ¶ 16.) Jones reported that his hernia had gotten "larger" and was "inflamed with more pain." (*Id.*)

On February 14, 2019, Jones was seen by PA Cartwright. (Cartwright Decl. ¶ 8.) This was the second, and final, time that she provided medical care for him. (*Id.*) PA Cartwright's assessment of Jones found that he had no acute distress, he was able to walk with a normal gait, and the hernia was reducible. (*Id.*) PA Cartwright ordered a hernia truss for Jones to support the hernia. (*Id.*) PA Cartwright also recommended that Jones be added to the "'roundtable' discussion list, so that his case could be discussed with other healthcare providers in the medical department." (*Id.*)

Jones continued to refuse the medications that Dr. Jamaludeen had prescribed for him to manage his bowel issues. (Jamaludeen Decl. ¶ 17.) On March 16, 2019, Jones was seen in the medical unit by a nurse practitioner when he reported severe pain from his hernia. (*Id.* ¶ 18.) An assessment revealed the hernia was not incarcerated. (*Id.*) Activity restrictions were reviewed

9

with Jones and recommended. (*Id.*) The following day, Jones placed another sick call request indicating that the pain was worse, and the hernia was protruding more. (*Id.* ¶ 19.)

On March 21, 2019, Dr. Jamaludeen saw Jones. (*Id.* ¶ 20.) While the pain appeared to be worsening, the assessment still revealed a non-strangulated hernia. (*Id.*) Due to Jones's "prior problem with constipation leading to the incarceration of the hernia and the need to avoid straining," Dr. Jamaludeen doubled the strength of Jones's Milk of Magnesia prescription and encouraged Jones to use it to prevent further issues. (*Id.*) In addition to addressing Jones's "discomfort and its sequela," Dr. Jamaludeen ordered a cane for Jones to assist him with walking. (*Id.* ¶ 21.) Despite Dr. Jamaludeen stressing to Jones the importance of taking the stool softeners, Jones did not always take his medications. (*Id.* ¶ 22.)

On April 8, 2019, Jones came to the medical unit and reported severe pain from his hernia. (*Id.* ¶ 23.) Dr. Jamaludeen examined him. (*Id.*) The hernia remained reducible. (*Id.* ¶ 24.) However, due to Jones's continued complaints of pain, that day, Dr. Jamaludeen requested an outside surgical consult to be set up for the "first available" time. (*Id.* ¶¶ 23, 24)

On May 11, 2019, Jones returned to the medical unit with reports of pain. (*Id.* ¶ 25.) He was seen by nurse at that time. (*Id.*) On May 13, 2019, Dr. Jamaludeen saw Jones again. (*Id.*) At that time, Jones's hernia was still reducible and Dr. Jamaludeen prescribed Jones Tylenol and Motrin for discomfort. (*Id.* ¶ 25.) On June 14, 2019, Jones was transferred from VBCC to Nottaway Correctional Center. (*Id.* ¶ 26.)

Cpl. Parris is a deputy employed by the Virginia Beach Sheriff's Office. (Parris Aff. ¶ 1.) Cpl. Parris has no medical training and no authority over medical personnel or medical decisions. (*Id.* ¶ 2.) She supervises non-medical deputies working in the medical department. (*Id.* ¶ 3.) Cpl. Parris has no knowledge of, or input into, decisions regarding inmate medical needs, care, or treatment. (*Id.* ¶ 4.) Cpl. Parris had no knowledge of, or involvement in, the medical decisions

10

relating to the care and treatment of Jones and his hernia, including whether or when he would be a candidate for surgery. (*Id.* ¶ 6.) If Dr. Jamaludeen or another jail medical provider called to ask for information regarding the length of an inmate's sentence, and Cpl. Parris was near a computer, where she could access the records, she would check the record and simply relay that information to the doctor. (*Id.* ¶ 5.)

### III.  Analysis

In order to survive summary judgment for a claim under 42 U.S.C. § 1983, a plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement . . . [and] ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "To that end, a prison official's deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal quotation marks and citation omitted).

To establish an Eighth Amendment violation, Jones must demonstrate that Dr. Jamaludeen, PA Cartwright, or Cpl. Parris acted with deliberate indifference to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged test set forth in *Farmer v. Brennan*. *Id.* Accordingly, to survive a motion for summary judgment on an Eighth Amendment claim, a plaintiff must demonstrate: (1) that objectively the deprivation suffered or harm inflicted was "'sufficiently serious,' and, (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v.*

*Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) (emphasis added). For the objective prong, a plaintiff must show a serious medical need. *Scinto*, 841 F.3d at 225. A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer*, 511 U.S. at 837. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm. . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim. *See Wright*, 766 F.2d at 849 (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

### A. Claim One – Dr. Jamaludeen

In Claim One, Jones alleges that Dr. Jamaludeen acted with deliberate indifference to Jones's serious medical needs when he failed to provide proper medical care for Jones's hernia. As discussed below, Jones fails to establish that Dr. Jamaludeen actually knew of and disregarded a serious risk of harm to Jones.

The record establishes that Jones received a great deal of medical care from Dr. Jamaludeen to address both his hernia and his various ongoing complaints of pain and discomfort. Dr. Jamaludeen treated Jones for his reducible hernia, and prescribed medicine for pain and discomfort, as well as medicine to treat the related issue of constipation, which aggravated Jones's hernia. (Jamaludeen Decl. ¶¶ 6, 9, 11, 12, 14, 17, 20, 21, 22, 23, 25.) Dr. Jamaludeen also provided Jones with a cane to help him. (*Id.* ¶ 21.) However, on at least one occasion, Jones refused to allow Dr. Jamaludeen to reduce his hernia. (*Id.* ¶ 9.) Similarly, Jones was inconsistent, at best, when it came to taking the various medications that Dr. Jamaludeen prescribed for him. (*Id.* ¶¶ 7, 15, 17, 20, 22.) When Jones's hernia appeared "tender to palpitation," Dr. Jamaludeen "immediately sent him" to the hospital. (*Id.* ¶ 12.) After Jones's brief trip to the hospital, Dr. Jamaludeen followed up with him "the next day" and assessed his hernia to now be easily reducible. (*Id.* ¶ 14.) A CT scan had shown Jones's bowel to be "full of feces," and Dr. Jamaludeen prescribed Jones Colace and Milk of Magnesia to help prevent

13

constipation. (*Id.*) Jones refused these "important medications." (*Id.* ¶ 15.) Despite the fact that Jones's hernia remained reducible, Dr. Jamaludeen ultimately requested an outside surgical consult due to Jones's continued complaints of pain. (*Id.* ¶¶ 23, 24.)

To the extent Jones was not satisfied with medications prescribed by Dr. Jamaludeen for his pain or his constipation, there is no evidence indicating that Dr. Jamaludeen was deliberately different to Jones's pain or discomfort in this regard. *Snipes v. DeTella,* 95 F.3d 586, 592 (7th Cir. 1996) ("Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations."). This case does not represent the sort of "extreme" circumstances that would necessitate judicial interference in the realm of medicinal pain management. *C.f. Martinez v. Mancusi*, 443 F.2d 921, 924–25 (2d Cir. 1970) (granting relief when doctor forced prisoner to walk out of hospital without hospital ordered pain medication and stand for meals after plaintiff had leg surgery for which hospital specialist had ordered plaintiff to lie flat and not to walk).

To the extent that Jones was displeased with Dr. Jamaludeen's decision to not seek a surgical consult sooner than he did, there is likewise no evidence indicating that Dr. Jamaludeen was deliberately indifferent to Jones's condition in this regard either. Jones had a reducible hernia. (Jamaludeen Decl. ¶ 6.) A reducible hernia is not a medical emergency. (*Id*. at 2 n.1.) A reducible hernia only poses a danger to patients when they become "incarcerated" or "strangled." (*Id*.) Conservative treatment is the only thing that is needed for a reducible hernia. (*Id*.) The record makes clear that Dr. Jamaludeen closely monitored Jones's condition to determine whether his hernia became "incarcerated" or "strangled." (*Id*. at 1–5.) In the absence of any evidence to the contrary, the Court can find no fault with Dr. Jamaludeen's decision not to seek a surgical consult any sooner than he did. *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) (the right to medical treatment is limited that which is medically necessary and not "that

which may be considered merely desirable"); *Wright*, 766 F.2d at 849 (absent extraordinary circumstances a disagreement between an inmate and medical staff about a course of treatment does not support a cognizable constitutional claim).

Overall, the uncontroverted evidence establishes that Dr. Jamaludeen was not deliberately indifferent to Jones's hernia or his related pain and discomfort. *Brown*, 240 F.3d at 389 ("[A]n official who responds reasonably to a known risk has not 'disregard[ed] an excessive risk to inmate health or safety,' and has therefore not acted with deliberate indifference." (second alteration in original) (quoting *Farmer*, 511 U.S. at 837)). Undoubtedly, Jones's lack of cooperation with Dr. Jamaludeen's directives negatively impacted the prognosis of his hernia, especially insofar as he did not regularly take his prescribed medicines. In sum, Jones fails to establish that Dr. Jamaludeen subjectively recognized a serious risk of harm to Jones and chose to ignore that risk. *Farmer*, 511 U.S. at 837. Accordingly, Claim One will be DISMISSED.

### B. Claim Two – PA Cartwright

In Claim Two, Jones alleges that PA Cartwright acted with deliberate indifference to Jones's serious medical needs when she failed to provide proper medical care for Jones's hernia. As discussed below, Jones fails to establish that PA Cartwright actually knew of and disregarded a serious risk of harm to Jones.

The record establishes that Jones had only two interactions with PA Cartwright. (Cartwright Decl. ¶¶ 7, 8, 9.) Despite their limited interactions, Jones received a significant amount of medical care from PA Cartwright. (*Id.*) During their first encounter, Jones asked PA Cartwright to refill his prescriptions for Tylenol and Motrin. (*Id.* ¶ 7.) PA Cartwright satisfied Jones's request. (*Id.*) In their second encounter, PA Cartwright assessed Jones and determined that he was not in acute distress, he was able to walk with a normal gait, and his hernia was reducible. (*Id.* ¶ 8.) PA Cartwright ordered a hernia truss for Jones to support his hernia. (*Id.*)

Finally, she recommended that Jones be placed on the "roundtable" discussion list so that his case could be discussed with other healthcare providers at the facility. (*Id.*)

The record shows that Jones's claim against PA Cartwright is even more attenuated than his claim against Dr. Jamaludeen. In his first interaction with PA Cartwright, Jones was given exactly what he had requested. In the second interaction, Jones appears to have received reasonable medical care under the circumstance that were known at the time. Overall, the uncontroverted evidence establishes that PA Cartwright was not deliberately indifferent to Jones's hernia or his related pain and discomfort. *See Brown*, 240 F.3d at 389. Jones has failed to establish that PA Cartwright acted with deliberate indifference to any of Jones's serious medical needs. Accordingly, Claim Two will be DISMISSED.

### C.  Claim Three – Cpl. Parris

In Claim Three, Jones alleges that Cpl. Parris acted with deliberate indifference to Jones's serious medical needs when she failed to "fast-track" Jones's transfer to the VDOC, so that he could receive surgery for his hernia on an expedited basis. As discussed below, Jones fails to establish that Cpl. Parris actually knew of and disregarded a serious risk of harm to Jones.

The record establishes that Cpl. Parris is a deputy employed by the Virginia Beach Sheriff's Office. (Parris Aff. ¶ 1.) She has no medical training and no authority over medical personnel or medical decisions. (*Id.* ¶ 2.) Cpl. Parris had no knowledge of, or involvement in the medical decisions relating to the care and treatment of Jones and his hernia, including whether or when he would be a candidate for surgery. (*Id.* ¶ 6.)

Jones has failed to put forth any evidence to refute Cpl. Parris's sworn statement that she had no knowledge of, or involvement in, the medical decisions relating to Jones's medical care and treatment. To the extent that Cpl. Parris even knew that Jones had a hernia, on the record before the Court, Cpl. Parris would be "justified in believing that [Jones] [was] in [the] capable

16

hands" of Dr. Jamaludeen.  *See Iko*, 535 F.3d at 242 (noting that non-medical prison official will generally be justified in concluding that the prisoner "is in capable hands" when receiving care from a medical expert).  Thus, Jones has failed to establish that Cpl. Parris was deliberately indifferent to Jones's medical needs.  Accordingly, Claim Three will be DISMISSED.

## IV.  Conclusion

For the foregoing reasons, the Parris Motion for Summary Judgment (ECF No. 22) and the Jamaludeen/Cartwright Motion for Summary Judgment (ECF No. 36) will be GRANTED. Cpl. Parris' Motion to Consolidate (ECF No. 26) will be DENIED AS MOOT.  Claims One, Two, and Three and the action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

/s/
M. Hannah Lauck
United States District Judge

Date: September 8, 2020
Richmond, Virginia